UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
789 MACDONOUGH STREET HOUSING DEVELOPMENT FUND CORPORATION,

                  Plaintiff,

   -against-

MOLLY WASOW PARK, AS THE COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK; JUSTICE MARIA ARAGONA, IN HER OFFICIAL CAPACITY; THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF INVESTIGATION; JOCELYN E. STRAUBER IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF INVESTIGATION; and EMMA OLIVER,

                  Defendants.
------------------------------------------------------------------------ X

Docket No. 1:25-cv-3680

**COMPLAINT**

Plaintiff 789 Macdonough Street Housing Development Fund Corporation ("Plaintiff"), by and through their counsel, Anderson Law, as and for their complaint against defendants Molly Wasow Park, as the Commissioner of Social Services of the City of New York, Justice Maria Aragona, in her official capacity, The City of New York, New York City Department of Investigation, Jocelyn E. Strauber in her official capacity as Commissioner of the New York City Department of Investigation, and Emma Oliver (collectively referred to as "Defendants"), states as follows:

**NOTICE OF ACTION**

1. This action challenges the City of New York and Justice Aragona's appropriation of private property without just compensation in violation of the Fifth and Fourteenth Amendments. Plaintiff, a low-income housing cooperative, is being compelled by a series of administrative and judicial orders to provide free housing to a former shareholder and board

1

president, criminal, and abuser, Emma Oliver. This compulsion continues despite Plaintiff having lawfully obtained a final judgment of possession and a warrant of eviction against Ms. Oliver, who was convicted of a felony for stealing over $120,000.00 from Plaintiff and who has not pay maintenance/rent since 2019.

2.     After Plaintiff spent years securing a lawful warrant to evict Ms. Oliver for nonpayment of over $46,000.00 in maintenance fees, government actors intervened to block its enforcement. The New York City Department of Investigation unilaterally issued multiple stays of the eviction without judicial authority. Subsequently, the Commissioner of Social Services initiated a guardianship proceeding and obtained an *ex parte* temporary restraining order from the New York State Supreme Court, which expressly prohibits Plaintiff from regaining possession of its property.

3.     These actions by the judiciary and executive branch officials have affected a physical taking of Plaintiff's property. The Supreme Court has made clear that when the government authorizes a physical occupation of private property, it constitutes a *per se* taking for which just compensation is due. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). By forcing Plaintiff to house an individual against its will and in defiance of a lawful eviction order, Defendants have commandeered Plaintiff's property and shifted a public social burden onto a private entity without providing any mechanism for compensation. Plaintiff and its shareholders, victims, are being forced to house their abuser, Ms. Oliver, at their own costs. This has already resulted in higher maintenance/rent charges for all other shareholders (many of which are on fixed incomes).

4.     Plaintiff is not a homeless shelter and should not be treated as one, especially without adequate compensation.

5. Accordingly, Plaintiff brings this action under 42 U.S.C. § 1983 to vindicate its constitutional rights. Plaintiff seeks a declaration that Defendants' actions have resulted in an unconstitutional taking of its property and an order for just compensation for the fair market value of the ongoing occupation. The government cannot force a private cooperative—itself composed of elderly, low-income shareholders—to solve a housing problem by forfeiting its own property rights.

## THE PARTIES

6. Plaintiff 789 Macdonough Street Housing Development Fund Corporation is a low-income cooperative corporation located in Brooklyn, New York, formed under Private Housing Finance Law, Article XI, for the purpose of providing housing to its shareholders.

7. Defendant Molly Wasow Park is the Commissioner of the New York City Department of Social Services ("DSS Commissioner") named in her official capacity for actions taken in connection with the 81 guardianship proceeding, pending in the Supreme Court of the State of New York, County of Kings, entitled *Molley Wasow Park, as the Commissioner of Social Services of the City of New York v. Emma Oliver,* Index No. 517435/2025 ("Article 81 Proceeding").

8. Defendant Justice Maria Aragona ("Aragona, J.") is a New York State Supreme Court Justice, named in her official capacity, who signed an *ex parte* order temporarily restraining Plaintiff from enforcing any action or proceeding against Oliver, including a warrant of eviction.

9. Defendant The City of New York ("NYC") is a municipal corporation organized under the laws of the State of New York. It is responsible for the operation and oversight of its constituent agencies, including the Department of Social Services ("DSS") and the Department of Investigation.

10. Defendant The City of New York Department of Investigation ("DOI"), is the licensing agency for New York City Marshals and is responsible for internally staying the lawful judgment of eviction involved in the underlying matter without rectifying or investigating the financial harms to Plaintiff.

11. Defendant Jocelyn Strauber is the Commissioner of DOI ("DOI Commissioner") and named in her official capacity. DOI issued administrative extensions of a lawful eviction in this matter without providing Plaintiff with notice or an opportunity to be heard and failed to investigate or remedy the financial harm to Plaintiff.

12. Defendant Emma Oliver ("Oliver") is a judgment proof resident of New York and is in possession of Apt. 1C ("Premises") in the Building (defined below) owned by Plaintiff.

## JURISDICTION AND VENUE

13. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the action arises under 42 U.S.C. § 1983 for violations of constitutional rights under the 14th Amendment.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because the Premises is located within this District.

## FACTS

15. Plaintiff is the lawful owner of the building located at 789 Macdonough Street, Brooklyn, New York 11233 ("Building").

16. Plaintiff is a limited equity low-income housing cooperative formed under Article XI of the Private Housing Finance Law.

17. Plaintiff's shareholders consist of many elderly individuals on fixed incomes.

18. Plaintiff is not a homeless shelter.

19. Plaintiff is not a Mitchell-Lama or similar to a Mitchell-Lama.

20. Plaintiff is privately owned and operated.

21. Plaintiff's shareholders and tenants are responsible 100% for the costs and expenses of the Building.

22. Plaintiff relies on the payment of maintenance (rent) to pay its bills, including repairs, taxes, maintenance, gas etc.

23. Plaintiff is struggling financially.

24. Plaintiff's struggles are largely because of Oliver's self-dealing and overall disrespect for the cooperative.

25. Oliver was a shareholder and proprietary lessee in the Building.

26. Oliver was an initial purchaser in the Building in 1989, when the Building converted to cooperative ownership.

27. Oliver is 90 years old and according to Commissioner may suffer from mental illness and be unable to take care of herself.

28. According to Commissioner, Oliver maintains two sources of income: $3,619.79 per month from a Department of Labor Pension and $369.00 per month in Social Security.

**I.  Oliver is Convicted of Grand Larceny for Stealing from Plaintiff.**

29. Oliver formerly served as President of the board of Plaintiff from 1998 to 2016.

30. In 2016, the State of New York commenced a criminal action against Oliver entitled *The People of the State of New York v. Emma Oliver,* SCI No. 9638/16, Index No. 1549-2018 ("Criminal Action"), based on Oliver's misappropriation of HDFC funds.

31. In other words, Oliver embezzled funds form the cooperative which she was entrusted to by its shareholders.

32. In the Criminal Action, a Judgment Order of Restitution was entered noting Oliver was convicted of the crime of Grand Larceny in the 2nd Degree (P.L. 155.40(1)), and Oliver was ordered her to pay restitution in the total sum of $122,680.17 ("Criminal Judgment"), of which $22,680.17 is to Plaintiff and $100,000 to Plaintiff's insurance company.

**II.   Oliver stops paying maintenance in 2019 and a Judgement of Possession was issued.**

33. In 2019, Oliver stopped paying maintenance to the HDFC.

34. Upon information and belief, HDFC was prevented from commencing an eviction proceeding against Oliver starting in early 2020 due to the COVID-19 pandemic.[1]

35. Upon information and belief, HDFC was prevented from commencing an eviction proceeding until the middle of 2022 because Oliver applied for and was approved the New York Emergency Rental Assistance Program, which paid for 12 months of arrears.

36. On or about September 7, 2022, the HDFC commenced a nonpayment proceeding against Oliver entitled *789 Macdonough St HDFC v. Emma Oliver, et al.*, Index No.: LT 320452/22 in the Civil Court of the City of New York, County of Kings ("Housing Court Proceeding" ).

37. On September 11, 2024, after trial in the Housing Court Proceeding, Plaintiff lawfully obtained a final judgment of possession of the Premises against Oliver, along with a money judgment for over $46,169.00 in unpaid maintenance plus interest.

38. On September 11, 2024, New York City Marshal Robert Renzulli applied for a warrant of eviction to removed Oliver.

39. Nearly five months later, January 31, 2025, a warrant of eviction was issued.

---

[1] The current board of directors and counsel were not the same as they were from 2019-2022, therefore, this information is based on the limited file turned over to the most recent board of directors.

40. On February 12, 2025, Oliver's Guardian Ad-Litem ("GAL") filed an order to show cause to vacate the warrant and stay Oliver's eviction.

41. The Housing Court granted a temporary restraining order, staying the eviction.

42. On February 26, 2025, the Court stayed Oliver's eviction for 30 days to give her time to vacate or timely pay the money judgement.

43. Oliver did not timely vacate.

44. Oliver's eviction was rescheduled for May 16, 2025.

45. On May 15, 2025, the GAL filed a similar order to show cause to vacate the warrant.

46. That same day, the Housing Court denied the application stating "2022 Case. Tenant arrears are $47,000."

47. On May 20, 2025, the GAL filed a similar order to show cause.

48. On May 21, 2025, the Housing Court denied the order to show cause.

**III.     The Department of Investigation Intervenes.**

49. On May 16, 2025, Oliver was scheduled for removal by Marshal Renzulli (the "Marshal").

50. On May 15, 2025, after the Housing Court denied the application for an extension of the eviction, DOI, without Court approval or any right to be heard by Plaintiff, unilaterally granted to Adult Protective Services ("APS"), a program operating under DSS, a stay of eviction.

51. Plaintiff learned that the DOI granted APS an extension of the eviction from the Marshal. The eviction was rescheduled to May 21, 2025 based on said extension. On May 20, 2025, the Marshal notified Plaintiff that DOI had granted APS a second extension of the eviction. The eviction was rescheduled for May 29, 2025.

52. On May 28, 2025, DOI granted APS a third extension of the eviction. The eviction was rescheduled to June 3, 2025.

53. DOI granted three extensions, and each time Plaintiff was not aware that any application was made to DOI to extend the time for the eviction.

54. Plaintiff was merely notified that DOI had granted the extensions of Oliver's eviction without any support or reasoning for such extension.

55. DOI's extension of the eviction allowed Oliver to remain in the Premises without paying maintenance or rent.

56. Self-help residential evictions in the State of New York are illegal.

57. New York City Marshals are the primary persons tasked with carrying out Housing Court evictions.

58. DOI interfered with Plaintiff's right to take possession of the Premises.

59. Plaintiff is unable to take possession of the Premises without a Marshal executing on the warrant.

### IV. DSS commences an Article 81 Guardianship Proceeding and stays the eviction.

60. On May 28, 2025, DSS Commissioner, commenced an Article 81 guardianship proceeding and sought a temporary restraining order ("TRO") enjoining Plaintiff from enforcing the warrant of eviction.

61. Upon information and belief, the TRO was supported by a petition of the DSS Commissioner ("Petition").

62. Plaintiff is not a named defendant or respondent.

63. DSS Commissioner did not provide Plaintiff with a copy of the Petition.

64. On June 2, 2025, at the request of Plaintiff's counsel, the Court held a conference on the TRO.

65. On June 2, 2025, Aragona, J., signed the TRO that deprived Plaintiff of the use of the Premises while compelling it to continue housing Oliver, a nonpaying individual with no current legal tenancy and a felony conviction for theft from the same Building.

66. The TRO was made returnable June 30, 2025, for a hearing.

67. According to the Petition filed by DSS Commissioner, they argued that the Guardian should not have to post a bond because "[u]pon information and belief, Emma Oliver lacks financial resources sufficient to justify the proposed guardian posting a bond, and the bond should be waived."

68. DSS Commissioner in the Petition misstated the rent that was due was only accruing since 2022. In fact, it was accruing from 2019.

69. DSS Commissioner in the Petition further misstated the debts Oliver owes, leaving out the criminal judgement with $100,000.00 plus interest due to Plaintiff's insurance company, and $22,680.17 due to Plaintiff.

70. Upon information and belief, those judgments have incurred interest at the rate of 9% per annum since June 28, 2018 through June 28, 2025, which is equivalent to $77,288.51 in interest, comprised $63,000 due to Plaintiff's insurance company, and $14,288.51 to Plaintiff.

71. Interest continues to accrue until the Criminal Judgment is satisfied.

72. In other words, DSS Commissioner failed to state nearly $200,000.00 in debt owed by Oliver.

73. On June 30, 2025, Plaintiff, via counsel, appeared for the hearing, which was actually scheduled for a conference.

74. At the conference, the Court adjourned the TRO until August 14, 2025, because Oliver's appointed counsel did not appear and because DSS Commissioner did not serve Oliver.

75. At the conference, Aragona, J. rejected any request by Plaintiff for use and occupancy or the posting of an undertaking to protect Plaintiff's interests.

76. Aragona, J. was made aware of the severe financial distress Oliver was in and that she would be unlikely to pay and use and occupancy for her occupancy.

77. Aragona, J. agreed with this assessment based on the papers which were filed by DSS Commissioner and the statements made at the conference.

78. No party asserted or is arguing that Oliver has any funds to make Plaintiff whole.

79. DSS Commissioner's counsel had no solutions for the issue at hand.

80. Upon information and belief, APS has been working for months to relocate Oliver, however, there is no housing which DSS or APS wish to place her in.

81. Upon information and belief, no family members wish to take Oliver.

82. Upon information and belief, DSS Commissioner does not wish to place Oliver at a homeless shelter or carry the financial burden of placing Oliver at one of the hotels they utilize for placing homeless individuals.

83. Upon information and belief, no other third-party organization wishes to take Oliver.

84. Plaintiff's counsel's request for an undertaking was ignored.

85. Upon information and belief, Aragona, J. refused to order an undertaking because the DSS Commissioner, as a city agency, cannot post a bond because there are "regulations."

86. Upon information and belief, DSS Commissioner is being granted special treatment due to DSS Commissioner being a NYC agency.

87. Further at the conference, Aragona, J. proposed a solution of Plaintiff issuing Oliver a lease for the Premises, so she can obtain a One-Shot Deal from the Human Resources

Administration, a division operating under DSS Commissioner, Section 8, and the Senior Citizen Rent Increase Exemption (SCRIE).

88. Plaintiff's counsel rejected the idea for several reasons.

89. First, because Plaintiff and their shareholders have a First Amendment Right to not be forced to issue a lease to Oliver, their abuser.

90. Second, Plaintiff and their shareholders, victims of Oliver, do not wish to live with Oliver because she robbed them.

91. Third, it would be illegal under the Certificate of Incorporation and Bylaws because Oliver's stock was sold in a non-judicial foreclosure to the HDFC for $1,000.00 on May 21, 2025. Only shareholders with proprietary leases are allowed to occupy units in the Building.

92. The Court suggested Plaintiff amend the corporate documents to allow Oliver to stay if Plaintiff wanted to get paid, indicating this was the only way for Plaintiff to receive funds for Oliver's occupancy.

93. To amend the Certificate of Incorporation, Plaintiff would need to host a shareholder meeting, obtain a quorum and obtain enough votes to amend the Certificate of Incorporation (it is doubtful this would happen), then make an application to the Attorney General of the State of New York ("AG") and New York City Department of Housing Preservation and Development ("HPD") to amend the documents.

94. After months of work, HPD and the AG's office may approve the amendment so that the person who stole over $120,000 from Plaintiff can live in the Premises while the government pays her rent.

95. The Court's suggestion would cost Plaintiff thousands of dollars and hundreds of hours of time.

96. Recognizing that Oliver may not be able to be relocated from the Building, the Court contemplated the life expectancy of Oliver and that she may need to remain in the Premises until her death.

97. The Court contemplated that Oliver's life expectancy could not be too long as she is 90 years old.

98. The Court indicated that Oliver stay would not be conditioned on her actually paying market rent, or any rent, for the Premises if she were allowed to stay through her death.

99. If Oliver were to become deceased, Plaintiff would further be delayed in recovering possession as an estate would need to be formed, likely at the cost of Plaintiff, the Public Administrator appointed, and it would likely take several years to regain possession.

100. Moreover, there are no assets or funds to recoup any of the costs and loss of use of the Premises.

101. Aragona, J., adjourned the conference to August 14, 2025, without ordering the payment of any rent or compensation.

102. Plaintiff is now compelled by judicial and administrative action to provide free housing to an unauthorized individual, without any compensation or legal process.

103. Moreover, Plaintiff is forced to shoulder the burden of legal fees to protect its rights to the Premises.

104. Defendants have failed to provide any mechanism for compensation or hearing for Plaintiff, depriving it of property without due process and without just compensation.

## COUNT ONE
**(As Applied Violation of the Takings Clause)**

105. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if more fully set forth at length herein.

106. The Fifth Amendment, as applied to the states via the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.

107. Plaintiff's forced occupation by Oliver is without a public purpose and solely a private purpose.

108. Oliver's continued occupation has resulted in a physical occupation of Plaintiff's property without Plaintiff's consent and without compensation to this day.

109. DSS Commissioner's MHL Article 81 proceeding purposely delayed the eviction process, resulting in Oliver's physical occupation of the Premises without Plaintiff's consent and without compensation to this day.

110. DSS Commissioner is liable for just compensation from the date of the TRO until possession is return to Plaintiff.

111. Aragona, J.'s authorization of the TRO on Plaintiff resulted in a physical occupation of Premises without Plaintiff's consent and without compensation to this day.

112. Aragona, J.'s, is liable for just compensation from the date of the TRO until possession of the Premises is returned to Plaintiff.

113. NYC, acting through the DOI, internally stayed the eviction by adjournments, resulting in a physical occupation of Plaintiff's property without Plaintiff's consent and without compensation to this day.

114. DOI Commissioner is liable for just compensation from May 15, 2025, until June 2, 2025.

115. Under *Cedar Point Nursery v. Hassid,* 594 U.S. 139 (2021), such government-sanctioned physical occupation constitutes a *per se* taking requiring compensation.

116. A physical appropriation has occurred since Plaintiff is not allowed to have possession the Premises and Oliver is allowed to keep possession.

117. But for DOI Commissioner, Aragona's, J.'s, and DSS Commissioner's actions, Plaintiff would have possession of the Premises.

118. Plaintiff has been deprived of income because of Oliver's occupancy.

119. Oliver is judgment proof.

120. Defendants are aware that Oliver is judgment proof.

121. There are no exceptions to avoid a taking and no background restrictions on property rights which would allow the Executive and Judiciary to commandeer Plaintiff's property.

122. Plaintiff has suffered financial loss as a result of being deprived of possession and use of its own property, and Defendants have failed to provide any just compensation.

**PRAYER FOR RELIEF**

**WHEREFORE,** for all the foregoing reasons, it is respectfully requested that judgment is entered as to Plaintiff's claims against Defendants as follows:

A. A declaration that Defendants have violated Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments, and an order for just compensation for the taking of Plaintiff's property, including ongoing and retroactive rental value and financial damages;

B. Attorneys' fees, costs, appropriate interest and disbursements; and

C. Such other and further relief as may be just and proper.

Dated: New York, New York
       July 2, 2025

                        **ANDERSON LAW**
                        *Attorneys for Plaintiff*

                        By: /s/ Gregory A. Byrnes
                            Gregory Byrnes
                            104 W 27th Street, 11th Floor
                            New York, New York 10001
                            (212) 466-6570
                            Gregory@andersonlaw.nyc